# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MISTY MILLER, )
)
        Plaintiff, )
)
v. ) Case No. CIV-09-329-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Misty Miller (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 20, 1975 and was 33 years old at the time of the ALJ's decision. Claimant completed her education through the eleventh grade, but obtained her GED and attended college for one semester. Claimant worked in the past as a retail

3

sales clerk, information clerk, sales representative, dispatcher, and grocery store clerk. Claimant alleges an inability to work beginning February 14, 2005, due to obesity, chronic back pain with radiation to the extremities, irritable bowel syndrome, hypothyroidism, status post gall bladder removal, sleep disorder, hyper reactive airway disease, nicotine dependence, and depression and anxiety.

## Procedural History

On August 3, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On September 22, 2008, an administrative hearing was held before ALJ Edward Thompson in Oklahoma City, Oklahoma. On January 29, 2009, the ALJ issued an unfavorable decision on Claimant's applications. On June 25, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential

4

evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to: (1) engage in a proper RFC analysis; and (2) find Claimant's mental impairments as severe.

### RFC Analysis

Claimant asserts the ALJ erroneously found Claimant could perform a wide range of light work. Claimant first reported problems with lumbar back pain on December 28, 1999. An MRI revealed "a large right sided disc herniation at the L5-S1 level, which compresses the right S1 nerve root." (Tr. 734).

On May 19, 2005, Claimant was treated by Dr. Kevin Shelton, complaining of a "ruptured disc in her back, which is hurting." Dr. Shelton encouraged Claimant to get on an anti-inflammatory medication with regularity. Claimant was given shots and told a follow-up visit would be required if the pain did not improve. (Tr. 315).

On September 19, 2005, Claimant again saw Dr. Shelton for "2 ruptured discs, which are aggravated." She received pain medication and was told to follow-up if her condition did not

improve. (Tr. 309).

Claimant began treatment with Dr. Michael J. Schwartz on April 13, 2006. Dr. Schwartz was to "evaluate and provide recommendations for care of [Claimant's] chronic persistent intractable pain condition." (Tr. 673). Dr. Schwartz found Claimant to be markedly obese with tenderness in the lumbar spine and weakness in the lower right extremity. (Tr. 674). He diagnosed Claimant with chronic persistent intractable pain syndrome, lumbar spondylosis with BLE radiculopathy, depression and anxiety, nicotine dependence/addiction, significant obesity, asthma, thyroid DO, SDBS with OSA. Id.

In visits with Dr. Schwartz in June and July of 2006, Claimant continued to report significant back pain. Dr. Schwartz changed pain medication from Lortab to morphine and back again with methadone. (Tr. 465-68).

Claimant continued treatment after a fall exacerbated her back condition. (Tr. 535).

On January 12, 2007, Claimant underwent a consultative physical examination with Dr. William Cooper. Dr. Cooper noted Claimant experienced pain in her lumbar spine with range of motion testing. Her range of motion was limited to 50 degrees flexion, 15 degrees extension, left and right side bending were normal at 25

6

degrees each. She exhibited moderate tenderness of the low back bilaterally. Claimant had a positive straight leg raising test bilaterally in the supine position and negative in the sitting position. (Tr. 347).

Dr. Cooper also found Claimant had normal right and left side bending and full range of motion in her cervical spine. Claimant's knees showed no edema and her knees were stable in all exercises. Claimant had 5/5 grip strength bilaterally and could perform gross and fine manipulation with her hands. Claimant had no sensory or motor deficit. (Tr. 347). Dr. Cooper found Claimant had a normal gait and did not require the use of an assistive device. She could perform heel walk, toe walk, and tandem walk without difficulty. (Tr. 348).

Dr. Cooper's assessment was depression, obesity, asthma, migraine headaches, lumbar disc disease, recent persistent nausea and vomiting, and adverse drug effect. (Tr. 348). Claimant has continued to experience pain in her back, receiving narcotic pain medication from April of 2006 through August of 2008. (Tr. 689-90).

On February 6, 2007, Claimant's medical records were evaluated by Dr. Luther Woodcock. He did not examine Claimant. Dr. Woodcock concluded Claimant was limited to lifting/carrying 20 pounds

7

occasionally, 10 pounds frequently; standing/walking to 6 hours in an 8 hour workday; sitting for 6 hours in an 8 hour workday; unlimited pushing and pulling; occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 362-63). He noted Claimant's height at 5'5" and weight of 319 pounds. Dr. Woodcock did not acknowledge any joint deformities but did note the limited flexion to 50 degrees of her lumbar spine. Id.

In his decision, the ALJ found Claimant suffered from the severe impairments of obesity, chronic back pain with radiation to the bilateral extremities, irritable bowel syndrome, hypothyroidism, status post gall bladder removal, sleep disorder, hyper reactive airway disease, and nicotine dependence/addiction. (Tr. 18). He determined in his RFC evaluation that Claimant could perform light work limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 21).

Claimant contends the record of back pain and medication should mitigate the opinions of Dr. Woodcock as a non-examining physician - the opinions relied upon by the ALJ in arriving at Claimant's RFC. She also notes that some information such as the MRI from 1999 was not in the record reviewed by Dr. Woodcock.

The record is devoid of any examining medical opinion as to Claimant's ability to engage in gainful work activity. Claimant

requests that this Court glean from the medical record that she could not perform at the RFC level provided by the ALJ. This Court is limited in its review to whether the ALJ's decision is supported by substantial evidence.

The ALJ not only relied upon the opinion of the non-examining physician, but also the examining consultative physician, Dr. Cooper. The ALJ acknowledged the 1999 MRI but also found an x-ray of Claimant's lumbar spine area on March 24, 2006 revealed that her vertebral bodies and discs maintained normal heights and relationships with no fracture, or other acute abnormality. (Tr. 22, 307). He noted Claimant had taken her medication but sought very little treatment for her back pain, including a surgical option. (Tr. 23).

Although in general an ALJ should give greater weight to the opinion of a treating physician than that of a consultant or non-examining physician, the ALJ is entitled to rely on all the medical evidence in the record, including that of the consulting and non-examining physicians. Soc. Sec. R. 96-6p. Moreover, the opinions of Dr. Woodcock are not contradicted by Dr. Cooper, an examining agency physician. Considering the lack of any opinions from treating physicians as to Claimant's ability to work or restrictions on her ability to engage in gainful activity, it was

not error for the ALJ to rely upon Dr. Woodcock's and Dr. Cooper's opinions.

## Mental Impairments

Claimant also contends the ALJ improperly found she did not suffer from a severe mental impairment. Claimant was diagnosed with depression and anxiety and received medication from Dr. Shelton in July and August of 2005. (Tr. 311, 314). Dr. Schwartz also diagnosed Claimant with anxiety and depression in December of 2006 and February of 2007, prescribing Prozac but also noting that Wellbutrin did not work. (Tr. 450, 452, 457).

On September 13, 2006, Claimant underwent a consultative mental status examination administered by Dr. Theresa Horton, a licensed psychologist. Acknowledging Claimant's physical problems, Dr. Horton also recorded Claimant stated her depression had been worse over the past few years and that she cried a lot and had panic attacks. Claimant stated that when she is upset, she cannot control her emotions, and she will get hives and have a panic attack. (Tr. 317). Claimant reported no history of specialized mental health care but was treated for depression by her physician for 14 years. (Tr. 318).

Claimant reported she spent her day in bed, did not enjoy television but does read sometimes. She does not do the cooking

and cleaning and has no hobbies. Claimant's husband does the cooking and cleaning and takes care of stepchildren that visit every other week. Id.

Dr. Horton diagnosed Claimant at Axis I: Major Depressive Disorder, Recurrent, Severe with psychotic features, PTSD with panic attacks, Dysthymia, early onset; Axis II: None; Axis III: Chronic pain, obesity, asthma, irritable bowel; Axis IV: Limited access to health care, finances. (Tr. 319-20). Dr. Horton concluded that Claimant had symptoms of depression and anxiety since early childhood and treatment from her physicians with medication since she was 17. Dr. Horton recommended counseling. (Tr. 320).

The ALJ acknowledged Dr. Horton's report but only insofar as it supported his finding that Claimant did not suffer from a mental impairment. (Tr. 19). When evaluating the evidence, the ALJ cannot pick and choose the evidence upon which he relies simply because it supports his finding of non-disability. Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004). Dr. Horton concluded Claimant's condition was severe. The ALJ does nothing in his decision to reject this diagnosis. On remand, the ALJ shall address Dr. Horton's finding of severe mental impairment.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of August, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE